# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL INDICTMENT** |
| v. | **NO. 1:11-cr-00520-RWS-GGB** |
| **CRAIG FRANKLIN, PAUL BOYKINS, and ANTONIO BROWN,** | |
| **Defendants.** | |

## FINAL REPORT AND RECOMMENDATION

Craig Franklin, Paul Boykins and Antonio Brown ("Defendants") are charged in an indictment returned on November 21, 2011. Franklin and Boykins are charged with conspiracy to cause false representations to be made with respect to the records of a federal firearms dealer, in violation of 18 U.S.C. § 371. Franklin and Boykins are also charged in 25 counts of making false representations in writing with respect to the purchase of firearms, in violation of 18 U.S.C. § 924(a). Boykins and Brown are charged in separate counts with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

Pending before this court are the following motions: Defendant Boykins's Motion to Suppress Statements, Motion to Suppress Traffic Stop, and Amended Motion to Suppress (Docs. 35, 41, and 47); and Defendant Brown's Motion for Jackson-Denno

Hearing, Motion to Sever Defendant, and Motion to Adopt Co-Defendant's Motion to Suppress Traffic Stop (Docs. 27, 28, and 43).[1] An evidentiary hearing on the motions to suppress was held before me on February 14, 2012. All transcript references are to the transcript of that hearing. (Doc. 50, "Tr.__"). Also, the parties have stipulated certain facts. (Docs. 59, 60). My recommendations on the referenced motions are set out below.

## I. FACTS

On October 25, 2011, Officer Eric Scott Cook with the Commerce (Georgia) Police Department ("CPD") was on patrol in his marked patrol car on Interstate 85. He had been traveling in the southbound lane and was attempting to make a U-turn into the northbound lane. (Tr. 6-7). While waiting to enter the northbound lane, Officer Cook observed a gray or silver Pontiac Grand Prix traveling northbound at approximately 65-70 miles per hour in the far left lane in a 70-mph zone. (Tr. 7-8). There were several cars behind the Grand Prix. (Tr. 7). As the vehicles behind the Grand Prix approached the location of the patrol car, they moved into one of the right lanes and slowed down. (Tr. 7-8).

---

[1] Defendant Franklin participated in the evidentiary hearing on February 14, 2012, but has subsequently withdrawn his motions to suppress (Docs. 52, 25, 26). The motions, therefore, will not be addressed in this Final Report and Recommendation.

2

Once the Grand Prix passed Officer Cook's patrol car, Officer Cook entered the northbound lane behind the Grand Prix. Officer Cook accelerated to catch up with the Grand Prix, but the officer did not activate his blue lights at that time. (Tr. 8, 22). As Officer Cook was approaching the Grand Prix, the Grand Prix moved into the righthand lane without using its turn signal. (Tr. 8). As it moved into the righthand lane, the Grand Prix was close to another vehicle in that lane.[2] Officer Cook testified that there was an unsafe distance between the two vehicles. (Id.). Officer Cook then moved to the right behind the Grand Prix, activated his blue lights, and pulled over the Grand Prix. (Id.).

The Grand Prix was driven by defendant Paul Boykins ("Boykins"), and the front seat passenger was defendant Antonio Brown ("Brown"). (Tr. 10-11). Boykins was unable to produce a driver's license, and Officer Cook learned that Boykins's driver's licenses were suspended in Georgia and New Jersey. (Tr. 13-14). Brown was arrested on outstanding warrants. (Tr. 16-17). Boykins gave consent for Officer Cook to search his vehicle. (Tr. 12-13). During the consent search, Officer Cook discovered nine

---

[2] I have watched the DVD of this event, which was entered into evidence as Government's Exhibit 1 (Tr. 9), and it is consistent with Officer Cook's testimony regarding the lane change of the Grand Prix.

3

AO 72A (Rev.8/82)

firearms and six cell phones. The firearms were in the trunk of the vehicle. (Doc. 60, Stipulation ¶¶ 2-3).

Detective Black with the CPD took possession of the six cell phones found in the vehicle. (Id. ¶ 3). Det. Black attempted to look at the phones at the scene of the traffic stop to determine their owner. Det. Black was able to view pictures on one of the phones that was unlocked. Det. Black concluded that this phone belonged to Boykins because the phone contained pictures of Boykins. While examining pictures on the phone, Det. Black observed pictures of a firearm. Det. Black also observed text messages about putting money in the bank and other messages about bringing items to other individuals. Det. Black was unable to access the data on the other cellular telephones recovered from the vehicle because they were password protected. (Id.).

When Brown and Boykins were read their Miranda warnings at the location of the stop, both men requested an attorney. (Tr. 15). When Brown was taken to the police department and questioned by Special Agent Lance Greer ("Agent Greer") with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Brown again repeated his request for counsel. (Tr. 39-40). However, later, and after being in the holding cell with Boykins for less than thirty minutes, Brown advised officers that he wanted to speak to Agent Greer. (Tr. 41).

4

Law enforcement agents learned that while Brown and Boykins were in holding cells, Boykins asked Brown to tell law enforcement that he was not involved with firearms violations. (Tr. 49). Brown was then interviewed by Agent Greer and admitted to owning the firearms recovered from Boykins's vehicle and purchasing those firearms at area gun stores. (Gov't Ex. 2).

Two of the cell phones found in the car belonged to Boykins. (Doc. 60, Stipulation ¶ 10). These cell phones were taken into custody by the CPD on October 25, 2011, the day of the stop. (Id. ¶ 3). On October 26, ATF Agent Greer took possession of three of the cell phones that belonged to Boykins. (Id. ¶ 4).

On October 28, 2011, Boykins was arrested on a criminal complaint charging him with possession of ammunition by a convicted felon, and he was transferred from the custody of the CPD to federal custody. (Id. ¶ 5). On November 10, ATF agents Degree and Sedberry collected the remaining three cell phones, including one of Boykins's phones, from the CPD. (Id. ¶ 6). On November 28, 2011, agents Degree and Sedberry sought and obtained a warrant (1:11-MJ-1808) to search the cell phones. (Id. ¶ 7). The cell phones were searched pursuant to this warrant on or about November 30, 2011 and December 5, 2011. (Id. ¶ 8). Pursuant to this forensic search and analysis, three email addresses associated with Defendant Boykins were discovered. (See Agent

5

Sedberry Aff. attached to Search Warrant No. 1:11-MJ-1901). On December 13, 2011, agents Degree and Sedberry sought and obtained search warrants for these three email addresses (1:11-MJ-1900, 1:11-MJ-1901).

Boykins was in custody from the date of his initial arrest on October 25, 2011 until his release on bond on January 30, 2012. He never requested or filed a motion for the return of his cell phones.

## II. DISCUSSION

### A. Probable Cause for the Stop

The government contends that the officers were justified in stopping Defendants' vehicle because they had probable cause or reasonable suspicion to believe that the driver (Boykins) had committed two traffic violations: (1) changing lanes without using a turn signal; and (2) impeding the flow of traffic.

With regard to changing lanes without using a turn signal, Georgia Traffic Code, O.C.G.A. § 40-6-123, Turning Movements and Required Signals, provides:

> (a) No person shall turn a vehicle at an intersection unless the vehicle is in the proper position upon the roadway as required in Code Section 40-6-120, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate and timely signal in the manner provided in this Code section.

6

(b) A signal of intention to turn right or left or change lanes when required shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.

Boykins contends that this law does not require a driver to use his turn signal when a lane change without a signal can be made with reasonable safety. Boykins's argument has support in Bowers v. State, 221 Ga. App. 886, 473 S.E.2d 201 (1996). In Bowers, the court interpreted the Georgia traffic code to provide that no turn signal is required as long as a turn can be made with reasonable safety. The court concluded that a highway lane change was reasonably safe without a signal when there was no other traffic within 100 yards of the vehicle. Id. at 887-88, 473 S.E.2d at 202-03.

However, Bowers and O.C.G.A. § 40-6-123 have uniformly been interpreted to require a turn signal when there are other vehicles in the area. See United States v. Frazier, No. CR408-146, 2008 WL 5245876 (S.D. Ga. Dec. 16, 2008)(collecting and discussing cases interpreting O.C.G.A. § 40-6-123); United States v. Woods, 385 F. App'x 914 (11th Cir. 2010). As recognized in Woods,

> [T]he Georgia Court of Appeals has consistently held that a defendant violates § 40-6-123 when he makes a signal-less lane change while there are other cars traveling nearby. See, e.g., Salinas-Valdez v. State, 276 Ga. App. 732, 624 S.E.2d 278, 280 (2005) (holding that a defendant violated § 40-6-123 for making a signal-less lane change that resulted in him pulling in front of the police car while traffic was "medium

7

AO 72A
(Rev.8/82)

> heavy to heavy"); Tukes v. State, 236 Ga. App. 77, 511
> S.E.2d 534, 536 (1999) (holding that a signal-less lane
> change violated § 40-6-123 when there were other cars
> nearby).

Woods, 385 F. App'x at 916. In the instant case, as there were clearly other cars traveling nearby, and Boykins changed lanes directly in front of, and very close to, another vehicle without using his turn signal, the officer had probable cause to stop Boykins for the violation of failing to signal while changing lanes.

Because of this finding, I will not address the government's other argument, that the officer had probable cause to stop Boykins for impeding the flow of traffic. That argument is the weaker of the two arguments because the officer's testimony left open the possibility that Boykins's vehicle was traveling at the maximum allowable speed, 70 miles per hour. A driver does not impede the flow of traffic for remaining in the lefthand lane when he is traveling at the maximum speed limit. O.C.G.A. § 40-6-184(2).

### B. Delay in Obtaining Warrant to Search the Cell Phones

Boykins argues that the search of his cell phones was unconstitutional because government agents waited too long to obtain a search warrant for his cell phones after lawfully obtaining possession of them. The initial seizure of the phones by the CPD was on the date of the traffic stop, October 25, 2011. ATF agents obtained possession

8

of three of the cellular phones on October 26, 2011. Boykins's Dell cell phone, which contained incriminating pictures and communications, was obtained by ATF agents from CPD officers on November 10, 2011, and a search warrant for all six cell phones was obtained on November 28, 2011. (Def.'s Ex. 1). Thus, depending on whether the counting starts on October 25th, October 26th, or November 10th, the delay in obtaining a warrant was either 34, 33, or 18 days. The government has not given a reason for the delay in obtaining a search warrant.

Boykins relies heavily on <u>United States v. Mitchell</u>, 565 F.3d 1347 (11th Cir. 2009). In <u>Mitchell</u>, law enforcement agents interviewed Mitchell at his home after identifying him as a possible target in a child pornography investigation. <u>Id.</u> at 1348-49. The agents asked Mitchell whether there was child pornography on his desktop computer, and Mitchell responded, "yes, probably." <u>Id.</u> at 1349. However, he refused to allow the agents to search that computer. The agents did not arrest Mitchell at that time, but seized his desktop computer's hard drive without obtaining Mitchell's consent. <u>Id.</u> The agents did not apply for a warrant to search the hard drive until 21 days later. <u>Id.</u>

The court in <u>Mitchell</u> held that the evidence obtained from the desktop computer should have been suppressed because the agents waited too long before obtaining a

9

search warrant to search the computer. Id. at 1352. Mitchell does not require suppression in the instant case, however, because, unlike the situation in Mitchell, the officers in this case did not take Boykins's property without his consent in order to preserve it until a search warrant was obtained.

The two issues presented to the Mitchell court were whether the officers should have taken Mitchell's entire computer rather than removing its hard drive, and whether the 21-day delay in obtaining a search warrant was unreasonable. Id. at 1350. In discussing the first issue, the court recognized that officers could have taken Mitchell's entire computer (including its hard drive) without a warrant or consent in order to ensure that the hard drive was not tampered with before a warrant was obtained. Id. The court cited and relied on cases that allowed law enforcement officers with probable cause to temporarily seize property (without consent or another exception to the warrant requirement) in order to preserve it pending issuance of a search warrant.

To illustrate the point that the seizure in Mitchell was allowable to temporarily prevent the destruction of evidence pending the issuance of a search warrant, the court in Mitchell cited and quoted from United States v. Martin, 157 F.3d 46, 53-54 (2d Cir. 1998). Mitchell, 565 F.3d at 1350. In the relevant portion of Martin, the court found that the police were justified in a warrantless seizure of a package from UPS that had

10

been sent to the defendant where the police had probable cause to believe that the package contained stolen items. Eleven days after the seizure, the police obtained a warrant to search the package. The Martin court held that the seizure of the package, pending issuance of a warrant to examine its contents, was justified because if it had not been seized, there would have been a risk of loss or destruction of suspected contraband. Martin, 157 F.3d at 53.

The Mitchell court also cited United States v. Respress, 9 F.3d 483, 486 (6th Cir. 1993), which similarly upheld the search of an item (a suitcase) in order to prevent its disappearance until a warrant could be obtained, and United States v. Mayomi, 873 F.2d 1049, 1054 (7th Cir. 1989), which upheld the temporary detention of the defendant's mail, pending issuance of a search warrant.

Here, unlike the situation in Mitchell and the cases it relied upon, officers did not seize Boykins's property without his consent for the purpose of preserving it pending the issuance of a search warrant. The officers were justified in searching Boykins's property (his vehicle) based on his consent after his lawful arrest. The consent search of Boykins's vehicle resulted in officers finding cell phones and firearms that

11

constituted evidence of a crime.[3] Boykins does not challenge the search of the vehicle, the examination on the scene of his cell phone, or the initial seizure of his cell phones.

For all of the reasons stated above, Mitchell is distinguishable from the instant case and does not provide a basis for the suppression of Boykins's cell phones.[4] See United States v. Emanuel, 440 F. App'x 881, 885-86 (11th Cir. 2011) ("Because Emanuel gave his voluntary consent to the seizure and search of his computer, Mitchell is inapposite"); United States v. Stabile, 633 F.3d 219, 235 (3d Cir. 2011) (distinguishing Mitchell because the warrantless seizures in Mitchell were based on probable cause and not consent).

---

[3] One of the phones had pictures of Boykins, a picture of a firearm, text messages about putting money in the bank, and other messages about bringing items to other individuals. The text messages indicated communication with other cell phones. At least by October 26, 2011, the date of the complaint, the officers knew that Boykins was a convicted felon. Thus, there was ample reason for the officers to believe, by that date, that the cell phones that they legally found in a consent search contained evidence of criminal activity.

[4] Boykins also relies heavily on United States v. Shaw, No. 1:11-cr-239-29-CAP-ECS, 2012 WL 844075 (N.D. Ga. Feb. 10, 2012), adopted by 2012 WL 843919 (N.D. Ga. Mar. 12, 2012)(granting defendant's motion to suppress evidence where search warrant was not obtained until three months after cell phones were seized). However, Shaw is distinguishable because the seizure in that case was based on a search incident to arrest rather than consent. To the extent that Shaw is not distinguishable, I disagree with it and choose not to follow it.

AO 72A (Rev.8/82)

Once Mitchell is removed from the analysis, it becomes relevant that Boykins did not request the return of his cell phones. See Stabile, 633 F.3d at 235-36 (citing United States v. Johns, 469 U.S. 478, 487 (1985) (concluding that defendants who "never sought return of the property" cannot argue that the government's delay in the search of packages adversely affected their Fourth Amendment rights)). Under the circumstances of this case, I find that Boykins's remedy, if any, was under Fed. R. Crim. P. 41(g), which allows a person aggrieved by the deprivation of his property to file a motion for return of that property even if the initial seizure was lawful. See United States v. Zambrano, 353 F. App'x 227, 228 (11th Cir. 2009) (citing Advisory Committee Note to the 1989 Amendments of Rule 41(g), which explains that Rule 41(g) no longer simply permits persons to seek return of property obtained from an unlawful search or seizure).

### C. Antonio Brown's Motions

Defendant Brown has moved to adopt Boykins's Motion to Suppress Traffic Stop (Doc. 43). I RECOMMEND that the motion to adopt be GRANTED, but for the reasons discussed above, the traffic stop was based on probable cause, and therefore I RECOMMEND that Brown's [Adopted] Motion to Suppress Traffic Stop (Doc. 43) be DENIED.

13

Defendant Brown also argues that his statements should be suppressed because they were the product of coercion by Boykins. Brown alleges that the agent who took his statement was aware of the coercion, yet did nothing to investigate it. (Doc. 53 at 11). Brown acknowledges that he was given proper Miranda warnings. (Id. at 10). He also acknowledges in his brief that coercion by a governmental actor, which is not present in this case, is a necessary element for a finding of an involuntary confession. (Id. at 11 [citing Colorado v. Connelly, 479 U.S. 157 (1986)]). Because there was no allegation of government coercion, Brown's [Adopted] Motion to Suppress (Doc. 43) should be denied.

Brown has also moved to sever his trial from his co-defendants (Doc. 28). Brown does not argue that he was improperly joined with his co-defendants, and the evidence from the suppression hearing indicates that the evidence against Brown and Boykins will overlap. Apart from speculation, Brown has provided no basis for the court to conclude that his co-defendants would testify on his behalf or exercise their constitutional right not to testify. Also, to the extent that Brown is arguing a prejudicial spillover effect from the evidence against his co-defendants, a possibility of spillover exists whenever two or more defendants are charged together in a single indictment. Any potential prejudice can be cured by careful instructions from the district court that

14

each defendant is to be considered separately. See United States v. Harper, 680 F.2d 731, 734 (11th Cir. 1982).

Therefore, I recommend that Brown's Motion to Sever (Doc. 28) be denied.

## III. CONCLUSION

In sum, for the reasons stated, I **RECOMMEND** that Defendant Boykins's Motion to Suppress Statements, Motion to Suppress Traffic Stop, and Amended Motion to Suppress (Docs. 35, 41, and 47) be **DENIED**. I also **RECOMMEND** that Defendant Brown's Motion to Sever Defendant (Doc. 28) be **DENIED**, that his Motion to Adopt Co-Defendant's Motion (Doc. 43) be **GRANTED**, but that Brown's [Adopted] Motion to Suppress Traffic Stop (Doc. 43) be **DENIED**.

Defendant Brown's Motion for Jackson-Denno Hearing (Doc. 27) is **DEFERRED** to the district court.

As mentioned earlier, Defendant Franklin's motions have been withdrawn.

There are no pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial. It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

15

AO 72A
(Rev.8/82)

It is so **ORDERED** and **RECOMMENDED**, this  27th  day of April, 2012.

*Gerrilyn G. Brill*
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)